DECKERVILLE HIGH SCHOOL DISTRICT *v.* SCHOOL DIS-
TRICT NO. 3 OF MARION AND BRIDGEHAMPTON
TOWNSHIPS.

1. SCHOOLS AND SCHOOL DISTRICTS—CREATION OF NEW DISTRICT
   —APPORTIONMENT OF INTEREST MONEYS.
   Where a legislative act dividing a school district provided that
   each district should receive one-half of all moneys, rents, and
   profits due to the district divided up to the time the act took
   effect, which was April 18th, the new district was not entitled
   to a share of the primary school interest fund apportioned to
   the old district in the following November, though the appor-
   tionment was based on the number of school children for the
   previous year.

2. SAME—MAINTENANCE OF SCHOOL — CONSTITUTIONAL REQUIRE-
   MENT.
   Under Const. art. 13, § 5, providing that no school district
   neglecting to maintain a school for at least three months in
   each year shall be entitled to its proportion of the income of
   the primary school fund for the ensuing year, a school district
   which, during the eight months which have elapsed since its
   organization, has had no school, is not entitled to share in an
   apportionment of interest moneys made within that period.

*Certiorari* to Sanilac; Beach, J. Submitted June 17,
1902. (Calendar No. 19,224.) Decided June 24, 1902.

*Mandamus* by the Deckerville High School District to
compel School District No. 3 of the townships of Marion
and Bridgehampton to pay to relator one-half of certain
primary school interest moneys. From an order granting
the writ, respondent brings *certiorari*. Reversed.

In 1901 the legislature organized the relator as a school
district from a part of the territory of the defendant school
district. The act provided for a sale of the property of the
old district, and a distribution of the proceeds therefrom
equally between the new and the old districts, and further

provided that each district "shall receive one-half of all moneys, rents, and other profits due to said district No. 3 previous and up to the time this act shall take effect." Each district was also required to pay one-half the debts. The act took effect April 18, 1901. (Act No. 398, Local Acts 1901.) The property was sold as the act directed, and on July 8, 1901, a complete settlement was made between the two districts, upon which the sum of $381.30 was found due from the respondent to the relator, which amount was paid. In November, 1901, the superintendent of public instruction apportioned to the respondent, as its share of the primary school money, the sum of $552, which was paid to the assessor of the respondent. Relator, claiming that, under the act above mentioned, one-half of said money belonged to it, made a demand for the same, which was refused, and the relator then filed a petition in the circuit court for the writ of *mandamus* to compel such payment. The writ was granted, and the case is now before this court for review.

*William H. Aitkin,* for relator.

*William H. Burgess,* for respondent.

Grant, J. (*after stating the facts*). It appears both from the petition for writ of *mandamus* and in the answer that at the time the petition was filed no school had been taught in the new district. The petition says that the school officers have contracted with a teacher to conduct the Deckerville high school for the winter and spring terms. The petition was filed January 13, 1902. The apportionment of the school moneys in November, 1901, was based upon the reports of 1900. The interest upon this primary school fund is computed to the 1st day of April in each year by the auditor general. It is after that apportioned by the superintendent of public instruction to the various school districts, based upon the number of children in each school district for the previous year, and is apportioned semi-annually between the 1st and 10th days

of May and the 1st and 10th days of November each year.

We think the court was wrong in holding that, under the terms of the act, the relator had a right to a division of the primary school moneys apportioned to the respondent. The moneys to be afterwards ascertained and apportioned were not included within the terms of the act. The answer, which must be taken as true, alleges that no teachers have been employed by the relator since its organization; that the respondent has maintained a school, and that it has been open and free to the whole of the original district; and that a large number of pupils residing within the territory of that district have attended the respondent's school, and are now in attendance, without charge for tuition. Further, by section 5, art. 13, of the Constitution, no school district which neglects to maintain a school for at least three months in each year shall be entitled for the ensuing year to its proportion of the primary school fund. Although the relator had been organized for eight months prior to the time of filing its petition, and more than six months prior to the apportionment to the respondent, yet it had no school. It could not, under this provision, receive the money directly from the State.

Judgment reversed.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred. LONG, J., did not sit.